UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Donald L. Gregory,

Civil No. 04-4836 (DSD/FLN)

    Petitioner,

v.     **REPORT AND RECOMMENDATION**

C. Holinka, Warden,

    Respondent.

_____

Donald L. Gregory, Pro Se Petitioner.
Tracy Braun, Assistant United States Attorney, for Respondent.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on the Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [#1]. Respondent filed a response in opposition to Petitioner's petition [#8]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons which follow, this Court recommends Petitioner's Petition be denied and dismissed with prejudice.

## I. BACKGROUND

Petitioner Donald L. Gregory is currently imprisoned at the Federal Correctional Institution in Waseca, Minnesota. He is serving a 64-month sentence imposed by the United States District Court for the Eastern District of Michigan for conspiracy to possess with intent to distribute cocaine base in violation of 21 U.S.C. § 846. Petitioner has a projected release date of December 24, 2006, via early release under 18 U.S.C. § 3621(e). See Kinyon Aff. [#9].

Petitioner brings this § 2241 habeas corpus Petition claiming that Bureau of Prison ("BOP")

officials violated his rights while he was incarcerated at the Federal Prison Camp in Yankton, South Dakota ("FPC Yankton"). He alleges he was denied his due process rights during three disciplinary proceedings that involved charges of Threatening Another with Bodily Harm (BOP Code 203), Refusing to Obey an Order of Any Staff Member (BOP Code 307), and Refusing to Accept a Program Assignment (BOP Code 306). As a result of the disciplinary proceedings, Petitioner was sanctioned to a total loss 29 days of good conduct time. In his Petition, Petitioner claims he did not commit the prohibited acts, did not cause anyone bodily harm, and was unjustly sanctioned. For relief, he seeks restoration of the good conduct time and expungement of the incident reports.[1]

### A.   Incident One: Threatening Another with Bodily Harm

On November 9, 2003, Petitioner received an Incident Report for Threatening Another with Bodily Harm. See Kinyon Aff. Ex. B, Discipline Hearing Officer Report, No. 1160999. On that evening, Petitioner was requested to report to the office of BOP Lieutenant J. Skowronek. Upon entering the office, the Lieutenant ordered Petitioner to remove his hat. The Petitioner became upset and loudly told the Lieutenant not to tell him what to do. At one point he approached the Lieutenant with clenched fists, cursed at him and threatened to beat him. Id. That evening, Petitioner received a copy of the Incident Report, which notified him of the charges. Id.

On November 12, 2003, a Unit Discipline Committee ("UDC") held a hearing on the incident. Petitioner was present and stated that the Incident Report was untrue, and that the Lieutenant had yelled and cursed at him. Because of the serious nature of the charge, the UDC referred the matter to the Discipline Hearing Officer ("DHO") for disposition. Id. The UDC

---

[1] Petitioner unexplainably seeks to have 47 days of good conduct time restored, even though the three disciplinary proceedings resulted in his loss of 29 days of good conduct time. See Petition pp. 5-6.

recommended that if Petitioner were found to have committed the prohibited act, he should be subject to loss of good conduct time and a disciplinary transfer.

The DHO held a hearing on November 25, 2003. The record shows that Petitioner was advised of his rights before and during the hearing. Id. A Case Manager represented Petitioner throughout the disciplinary process. Petitioner originally requested three witnesses to testify: Officer Bendt, who witnessed the exchange between Petitioner and the Lieutenant; Officer Clayton, who had escorted Petitioner to detention after the exchange; and Marilyn Steffen, a contract vendor who was working in the area at the time of the incident. Petitioner did not call Officer Clayton or Ms. Steffen, however, because they did not have direct relevant information or knowledge of the incident in question. Id.

During the hearing, Petitioner stated that the Lieutenant had yelled and swore at him and pushed him.[2] He stated he never clenched his fists, cursed or threatened the Lieutenant. Id. Officer Bendt testified as a witness and submitted a written statement. Upon cross-examination by Petitioner's representative, he stated that he had seen Petitioner clench his fists as his agitation and hostility increased, and that the Lieutenant only touched Petitioner to cuff him. Id.

After reviewing the evidence, the DHO concluded that Petitioner had threatened another with bodily harm in violation of BOP Code 203. The DHO sanctioned Petitioner to the loss of twenty days of good conduct time, and recommended a disciplinary transfer. DHO provided a written report of the findings, sanctions and reasoning to Petitioner on December 3, 2003.

**B.**

---

[2] Petitioner's allegations of staff abuse were referred to the internal Special Investigative Supervisor's Office, which found there was no evidence to substantiate his claims. See Kinyon Aff. ¶ 6 n. 1.

**B.     Incident Two: Refusing to Obey a Staff Order**

On December 1, 2003, Petitioner was given an Incident Report for Refusing to Obey an Order. See Kinyon Aff. Ex. C, Discipline Hearing Officer Report, No. 1167950. On that morning, Petitioner was ordered to leave the county detention center and return to FPC Yankton. Petitioner refused to return, stating that he feared for his safety at FPC Yankton. A copy of the Incident Report, notifying Petitioner of the charge, was given to him that evening.

On December 3, 2003, the UDC held a hearing concerning the incident. Id. Petitioner was present and stated that he refused to return to FPC Yankton because he feared for his safety and thought no one would protect him. Because of the seriousness of the charge, the UDC referred the matter to DHO for disposition and recommended that, if Petitioner were found to have committed the prohibited act, he be sanctioned with a disciplinary transfer and loss of good conduct time. Id.

The DHO held a hearing on the charge on December 5, 2003. Petitioner was advised of his rights prior to the hearing. Id. He waived his right to staff representation throughout the disciplinary process and did not request any witnesses. During the hearing, Petitioner admitted that he refused to return to the general population, but stated that he refused for good reason. Id. He stated he was concerned for his physical safety because he had been assaulted and belittled by Lieutenant Skowronek and Officer Bendt. He stated that until corrective action had been taken against the BOP staff, he refused to return to FPC Yankton. Petitioner provided no documentary evidence on his behalf. Id.

The DHO considered the incident report and Petitioner's statements and concluded that he had committed the prohibited act of Refusing to Obey an Order, in violation of FOB Code 307. Id. The DHO recommended a disciplinary transfer and sanctioned Petitioner with the disallowance of

five days good conduct time. Id. A written report of the findings, sanction, and reasoning of the DHO was delivered to Petitioner on December 9, 2003.

### C.    Incident Three: Refusing to Accept a Program Assignment

On December 8, 2003, Petitioner was given an Incident Report for Refusing to Accept a Program Assignment. See Kinyon Aff., Ex. D, Discipline Hearing Officer Report, No. 1170128. That morning, Petitioner was ordered to prepare for his transfer from the county detention center to FPC Yankton, but he refused. Id. He received a copy of the Incident Report that afternoon.

On December 11, 2003, the UDC held a hearing on the incident. Petitioner was present and stated that when a staff member asked if he was ready to return to FPC Yankton, he said "no." Id. Because the seriousness and repetitive nature of the incidents, the UDC referred the matter to the DHO for disposition, with the recommendation Petitioner be sanctioned with the loss of good conduct time and a disciplinary transfer if he was found to have committed the prohibited act. Id.

The DHO held a hearing on the matter on December 30, 2003. Petitioner was advised of his rights before the hearing. Id. He waived his right to staff representation throughout the disciplinary process and did not request any witnesses. During the hearing, Petitioner admitted that he refused to return to the general population at FPC Yankton to accept treatment. He stated that he refused to return because he feared for his safety because Lieutenant Skowrenek had assaulted him. He stated that he did not believe the matter had been properly investigated. Id. Petitioner did not provide any further documentary evidence on his behalf.

After review of the evidence, the DHO concluded that Petitioner had committed the prohibited act of Refusing to Work or Accept a Program Assignment, in violation of BOP Code 306. The DHO sanctioned Petitioner to the loss of four days good conduct time and recommended a

disciplinary transfer. A written report of the DHO's findings, sanction and reasoning was provided to Petitioner on January 5, 2004.

### D. Administrative Appeals and Exhaustion of Remedies

Petitioner appealed each disciplinary proceeding through the Administrative Remedy Program. See Kinyon Aff., Ex. E, Administrative Remedy Generalized Retrieval. On all occasions, the findings of the DHO were upheld and the sanctions deemed appropriate. Id. Respondent acknowledges that Petitioner has exhausted his administrative remedies and opposes the Petition on the merits. See Resp. Mem. p. 8.

## II. LEGAL ANALYSIS

### A. Petitioner's Constitutional Rights Were Not Violated During the Disciplinary Proceedings

To obtain habeas relief under 28 U.S.C. § 2241, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2244(c)(3); Rose v. Hodges, 423 U.S. 19, 21 (1975) (citing 28 U.S.C. § 2241). Here, Petitioner alleges that the three BOP disciplinary proceedings violated his constitutional rights to due process and equal protection because he did not commit the prohibited acts, did not cause anyone bodily harm, and was unjustly sanctioned. The Court disagrees and finds that the record does not support Petitioner's contention that he was disciplined in violation of his due process rights.[3]

---

[3] In his Petition, Petitioner alleges that he was disciplined in violation of his due process rights. He also briefly alleges that the BOP administered the BOP rules in a discriminatory manner, in violation of his equal protection rights. See Petition pp. 4-5. Petitioner, however, provides no foundation for an equal protection claim. He alleges no facts to establish that the BOP failed to treat similarly situated persons alike. See e.g., Abdullah v. Gunter, 949 F.2d 1032, 1037 (8th Cir.1991). Therefore, his equal protection claim fails as a matter of law.

### 1.  The Disciplinary Hearings Comported with the Procedural Requirements Set Forth in Wolff

Petitioner claims he was subjected to disciplinary sanctions in violation of his constitutional rights. A prisoner must be afforded at least some procedural due process protections before being deprived of good conduct time. Wolff v. McDonnell, 418 U.S. 539, 557 (1974). Nonetheless, a prisoner who is facing a loss of good conduct credits is not entitled to the full panoply of procedural rights that accompanies a criminal prosecution. Id. at 566. To satisfy the constitutional requirements of due process, prisoners facing a loss of good conduct time must be given: 1) advance written notice of the charges; 2) an impartial hearing body; 3) an opportunity to present witness testimony and other evidence; 4) assistance for illiterate inmates or in complex cases; and 5) a written explanation of the ultimate resolution of the charges. Espinoza v. Peterson, 283 F.3d 949, 951-52 (8th Cir. 2002).

The Court finds that during his three disciplinary hearings, Petitioner received at least the minimal procedural benefits prescribed by Wolff. The record shows that, for each proceeding, Petitioner was provided an incident report that afforded him written notice of the charges well in advance of the UDC and DHO hearings. See Kinyon Aff. Exs. B, C, D. On each occasion, the notices were provided to Petitioner at least 24 hours before the DHO hearing. The hearings were conducted by a certified DHO, who are impartial hearing officers. Petitioner was present at all UDC and DHO proceedings. He was advised of his rights prior to the hearings, including the right to a staff representative and the right to present witnesses and documentary evidence on his behalf. Finally, after each disciplinary hearing, Petitioner was provided a written report of the DHO decision, which included a written statement of the evidence relied upon and the reasons for the sanctions imposed. In his Petition, Petitioner does not contend that he was denied any of the above

elements required to ensure procedural due process in disciplinary hearings. The record shows that Petitioner was afforded the basic procedural safeguard required by Wolff.

### 2. There Was Sufficient Evidence to Support the Findings of the DHO

Petitioner's claims that the disciplinary proceedings violated his constitutional rights are largely evidentiary in nature. He contends there was insufficient evidence to find that he engaged in the prohibited acts as charged.

The Supreme Court has held, however, that the findings of a prison disciplinary authority should not be second-guessed by the federal courts as long as they "are supported by some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 454 (1985). Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Id. at 455-56. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. Id.

Here, the Court finds that the minimal "some evidence" standard is met. In Petitioner's first incident, Officer Bendt's written statement and testimony corroborated Lieutenant Skowronek's account of Petitioner's aggressive behavior. In the second incident, Petitioner admitted that he disobeyed an order to return to FPC Yankton. In the third incident, he admitted that he refused to return to FPC Yankton to accept programming. In each proceeding, the record before the DHO contained the incident report, witness statements, and petitioner's statements, all of which indicated that Petitioner had violated BOP rules. The only evidence in the records that contradicted the DHO findings was Petitioner's own statements regarding the first incident. Based upon all the evidence, the DHO reasonably concluded that Petitioner committed the prohibited acts and sanctioned him

accordingly.

In conclusion, the Court finds that the record provides at least some evidence to support the DHO's determination that Petitioner violated the BOP rules. For each incident, Petitioner was provided the opportunity to explain his position, present evidence, and call witnesses on his behalf. Therefore the Court finds no constitutional error in the DHO's decision to sanction the Petitioner. Petitioner's request for expungement of his disciplinary record and reinstatement of good conduct time should be denied.

### III. RECOMMENDATION

Based on all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1) Petitioner's Petition for Writ of Habeas Corpus [#1] be **DENIED,** and that this action be **DISMISSED WITH PREJUDICE,** and that

2) Petitioner's Motion for Default Judgment [#11] be **DENIED.**[4]

DATED: August 11, 2005                            s/ *Franklin L. Noel*
                                                  FRANKLIN L. NOEL
                                                  United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **August 30, 2005**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief

---

[4] Petitioner moved for Default Judgment in February 2005. See [#11]. In an Affidavit attached to his Motion, Petitioner argued that judgement should be entered in his favor because the Respondent did not timely respond to his Petition. See [#12]. Respondent, in an Order granting the request for an extension of time to file a response, was Ordered to respond to the Petition by January 10, 2005. See [#7]. Respondent submitted a Memorandum in Opposition to the Petition on January 6, 2005. [#8]. Thus, Respondent timely responded to the Petition and Petitioner's Motion for Default Judgment should be denied.

within ten days after service thereof.  All briefs filed under the rules shall be limited to ten pages.  A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.